IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,           )
                                )
vs.                             )       No.   08-3282
                                )
IRVING COHEN, THE WINDSOR       )
ORGANIZATION, INC., and 3-B     )
STORES, INC.,                   )
                                )
            Defendants.          )

## OPINION

RICHARD MILLS, U.S. District Judge:

The Court now considers the Plaintiff's Motion in Limine to Exclude the Expert Testimony of Herman Schwartzman and the Plaintiff's Motion in Limine to Exclude the Testimony of Markus Kolzoff.

The Motion as to Schwartzman is Allowed in part.

The Motion as to Kolzoff is Allowed in toto.

Here's why.

# I. Motion to Exclude Expert Testimony of Herman Schwartzman

## (A)

Plaintiff United States of America has filed a motion in limine to exclude the expert testimony of Herman Schwartzman. Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Testimony which interprets the law is subject to exclusion. See United States v. Lupton, 620 F.3d 790, 799 (7th Cir. 2010). "[T]he meaning of statutes, regulations, and contract terms is 'a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge.'" Id. at 799-800 (quoting United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008)).

The Plaintiff contends that the Court should exclude Mr.

Schwartzman's purported testimony pertaining to New York trust law because it interprets New York law about the validity of trusts and the powers and duties of trustees, without reference to any facts. Moreover, his proposed testimony construes the legal significance of documents. The Plaintiff contends that because construing the trust and sales agreements for their legal effect is the province of the Court, Schwartzman's proposed expert testimony should be barred.

Specifically, the Plaintiff asserts that Schwartzman's opinions expressed in Parts I.A and I.B of his Rule 26(a)(2)(B) Report should be excluded, including (1) the validity of the Hal S. Cohen No. 2 Trust, Laurence S. Cohen No. 2 Trust and Jennifer P. Cohen No. 2 Trust ("Cohen No. 2 Trusts"); (2) the powers and authority granted to the trustees of the Cohen No. 2 Trusts and the Lillian Rosen Trusts; (3) the extent of the economic benefit Defendant Irving Cohen received from the Cohen No. 2 Trusts; (4) the legal implications of a 1983 agreement between the Cohen No. 2 Trusts and the Lillian Rosen Trusts; and (5) the powers and duties given to the trustee of the Lillian Rosen Trusts and the propriety of the

trustee's actions.

Relying in part on Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505 (2d Cir. 1977), Defendant Windsor Organization, Inc. states that while an attorney cannot testify as to the legal significance of a document, an attorney with relevant experience may testify as to the ordinary and customary practices of a trade or business. See id. at 509 ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs.").

Windsor claims that Schwartzman's expert opinion is based upon his "experience and knowledge of trusts" and should not be excluded. Windsor claims that his review of the documents should not be excluded because he is qualified to determine that based on his knowledge of New York trust law and experience in the administration of trusts created under New York law, the powers given to the trustees of the Cohen No. 2 Trusts were "common powers and limitations given to trustees under New York law." Moreover, Windsor states that Mr. Schwartzman was appointed Co-Trustee of the

Cohen No. 2 Trusts on May 28, 1982, and has personal knowledge of the powers and authorities of the trustee(s) of the Cohen No. 2 Trusts, based upon his review of the trust documents and his experience and knowledge of the trusts and trust law.

Additionally, Windsor claims that Mr. Schwartzman will testify that the powers given to the trustee of the Lillian Rosen Trust for the benefit of Hal S. Cohen, Lillian Rosen Trust for the benefit of Laurence S. Cohen, and the Lillian Rosen Trust for the benefit of Jennifer P. Cohen ("Lillian Rosen Trusts") were "broad powers commonly given to trustees." Schwartzman further opines that it was reasonable for the trustee given such common powers to take action to preserve Property owned by the Lillian Rosen Trusts. Windsor further contends that his knowledge of the authority and power granted to the trustee of the Lillian Rosen Trusts as set forth in the agreement drafted by him will assist the Court in understanding the evidence and to determine the facts at issue.

Windsor alleges that the Expert Report sets forth facts which are drawn from the trust documents and does not interpret the documents.

Paragraph 1(A) sets forth facts providing that the Cohen No. 2 Trusts were funded with $3,000 transferred to the trustee, Stanley Levine. Levine was then discharged as Trustee and Marvin Rosenbaum and Schwartzman were appointed as Successor Co-Trustees of the Cohen No. 2 Trusts. Windsor claims that this merely sets forth the facts based on Schwartman's personal knowledge and the history of the trusts as set forth in the trust documents. It further asserts that his opinion relates to the powers commonly given to trustees under New York trust law. Windsor alleges that such testimony is allowed under Rule 702 because Schwartzman is testifying as to the common practices and powers of trustees based on his experience and knowledge of New York trust administration which has been accumulated in the course of a 55-year legal career. Windsor claims the opinion will assist the Court to understand the evidence and to determine the facts at issue.

Additionally, Windsor asserts that Paragraph 1(B) of the Expert Report does not interpret the provisions of the Trust Agreement. It merely sets forth the powers granted to the trustee of the Lillian Rosen Trusts.

Windsor contends that Schwartzman opines that based on his experience, those powers were common broad powers given to trustees of trusts created pursuant to New York law. Windsor claims the opinion will be of assistance to the Court.

(B)

It is difficult to describe Schwartzman's Rule 26 Report as doing anything other than interpreting New York trust law. It begins by setting out general principles of New York trust law and includes citations to the New York Estates, Powers and Trust Law and applicable case law. The Report then discusses the Cohen No. 2 Trusts and the Lillian Rosen Trusts. Schwartman then gives an opinion of the validity of the trusts. He states that the opinion as to the Cohen No. 2 Trusts is based on the terms of the Trust Agreement, his experience and knowledge of New York trust law, and his review of the relevant documents and exhibits. Schwartzman's opinion as to the Lillian Rosen Trusts is also based on his knowledge as draftsman of those Trust Agreements.

Although Windsor claims that Schwartman's opinion is based upon

his "experience and knowledge of trusts" and he is testifying as to the common and ordinary practices and powers of trustees, it is apparent that he is applying principles of New York trust law to the specific trusts at issue in this case. Although Schwartzman no doubt has extensive knowledge of the common and ordinary practices of trustees, many of the opinions in his Report purport to interpret the legal significance of documents which are relevant to this case. Such testimony is subject to exclusion. Like the attorney who "gave his opinion as to the legal standards which he believed to be derived from the contract and which should have governed [Defendant's] conduct," see Marx & Co., 550 F.2dat 509, the proposed testimony here does not simply discuss common industry practices. The testimony which interprets the law must be excluded.

The testimony which shall be excluded includes the following: (1) the validity of the Cohen No. 2 Trusts; (2) the powers and authority granted the trustees of the Cohen No. 2 Trusts and the Lillian Rosen Trusts; (3) the extent of the economic benefit Irving Cohen received from the Cohen No. 2 Trusts; (4) the legal implications of a 1983 agreement between the Cohen

No. 2 Trusts and the Lillian Rosen Trusts; and (5) the powers and duties given to the trustee of the Lillian Rosen Trusts and the propriety of the trustee's actions. The motion in limine will be allowed to that extent. The propriety of any other purported expert testimony will be considered at trial.

Obviously, based on his role in drafting the Lillian Rosen Trust Agreements and status as Successor Co-Trustee of the Cohen No. 2 Trusts, Schwartzman may testify as a percipient fact witness.

## II. Motion to Exclude Markus Kolzoff's Testimony

### (A)

The Plaintiff has filed a motion in limine to exclude Markus Kolzoff's testimony made at a hearing in Liechtenstein on December 17, 2010.

The Plaintiff asserts that Windsor holds the Springfield property as Irving Cohen's nominee or alter ego. Defendants Windsor and Cohen assert that Windsor is wholly-owned by a British Virgin Islands Corporation, TI&M Services, LTD. The Plaintiff states that Cohen claims

that, after Windsor Income Properties defaulted on its mortgage, Cohen negotiated a deal to save the Springfield property with TI&M through its representative, Markus Kolzoff, a Liechtenstein citizen and member of TI&M's Board of Directors. Cohen alleges that Kolzoff agreed to provide funding for improvements to the property in exchange for ownership interest. The Plaintiff notes that Cohen claims that he had four meetings with Kolzoff in Liechtenstein, and that they are the only two people with knowledge of the purported transaction between Windsor and TI&M. Consequently, Kolzoff was identified as an important witness in this case. However, he refused to sit voluntarily for a deposition.

On October 14, 2010, the Court issued a Letter of Request asking Liechtenstein to compel Kolzoff's appearance to give testimony and produce documents related to this action. In the resulting hearing before the Principality of Liechtenstein's Princely Court of Justice, Kolzoff refused to be deposed and refused to produce any documents. The letter from Dr. Josef Fussenegger, Regional Judge, states in part:

> The witness Dr. Markus Kolzoff relied upon his right to refuse to testify, as he is permitted to do, in connection with his

confidentiality duty as attorney and trustee. With respect to the request for production of documents, reference is made to the remarks of the witness Dr. Markus Kolzoff in the minutes dated 17 Dec. 2010.

According to the Plaintiff, Kolzoff offered limited testimony that was unresponsive to the Letter of Request. Consequently, the Plaintiff requests that the testimony be stricken.

The Court has reviewed the 39 previously approved questions which were propounded by the Plaintiff [d/e 93], in addition to Kolzoff's testimony. A review of Kolzoff's testimony shows that it addressed very few of those questions. The Plaintiff contends that the testimony must be excluded under Rule 804(b). Rule 804(b)(1) provides the following testimony is not excluded by the hearsay rule if the declarant is unavailable:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1). In support of its motion, the Plaintiff claims that no party had an opportunity to develop Kolzoff's testimony. The presiding

judge did not ask any of the approved 39 questions. In fact, he asked no questions. Rather, the Plaintiff states that Kolzoff simply refused to answer any questions and attempted to incorporate by reference a prior declaration made on March 15, 2010. Therefore, the Plaintiff claims that the testimony is inadmissible under Rule 804(b).

Windsor claims that "Plaintiff had opportunity and motive to develop the <u>questions</u> propounded to the Fürstliche Landgericht which were directed to Kolzoff." (emphasis added). While the Plaintiff did have an opportunity to develop the questions, the rule requires that it be able to develop the "<u>testimony</u> by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1) (emphasis added). Because of the witness's refusal to answer, no party was able to develop his testimony by these methods.

Windsor's reliance on <u>United States v. Salim</u>, 855 F.2d 944 (2d Cir. 1988) is misplaced. In <u>Salim</u>, the attorneys were present in France for the deposition. <u>See</u> <u>id.</u> at 947. It appears that the witness answered most, if not virtually all, of the questions that were submitted to the French magistrate by the parties. <u>See</u> <u>id.</u> at 947-48. The parties were able to

provide follow-up questions to be asked.  See id.  After a one week continuance, the deposition resumed.  See id. at 948.  The American participants returned to France and another round of questioning occurred. See id.  Unlike in this case, both parties in Salim had an opportunity to develop the witness's testimony.

Accordingly, Kolzoff's limited testimony does not meet the Rule 804(b)(1) standard for unavailable witnesses.

(B)

(1)

The Plaintiff also contends that Kolzoff's testimony fails to meet the requirements for the residual exception to the hearsay rule.  Rule 807(a) provides:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by Rule 803 or 804:
>
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

> (4) admitting it will serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). In considering a previous version of the residual exception, the Seventh Circuit noted that courts have been directed to narrowly construe the exception to the hearsay rule. See Keri v. Board of Trustees of Purdue University, 458 F.3d 620, 631 (7th Cir. 2006). The most important factor is that the statement is "trustworthy." See id.

In assessing the trustworthiness of hearsay testimony, courts should consider the following information:

> the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to [give the statement in question]; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability.

United States v. Doerr, 886 F.2d 944, 955-56 (7th Cir. 1989). "This list of factors is neither exhaustive nor absolute, and each case must be analyzed on its own facts." Id. at 956.

(2)

Applying these factors, the Plaintiff alleges there is no available evidence as to Kolzoff's character. Moreover, although he gave his testimony under oath, Kolzoff did not submit to the Plaintiffs' laws which punish perjury. The Plaintiff points out that, if Kolzoff had complied with the Court's request to produce documents, his written declaration would have been "under penalty of perjury under the laws of the United States." See 28 U.S.C. § 1746(1). Moreover, Kolzoff was not subject to any examination, let alone rigorous cross-examination. The Plaintiff compares Kolzoff's testimony to grand jury testimony, which provides little, if any, circumstantial evidence of trustworthiness. See United States v. Snyder, 872 F.2d 1351, 1355 (7th Cir. 1989).

Windsor claims that Kolzoff's testimony is admissible under the residual exception to the hearsay rule. It asserts that the statements made by Kolzoff in answer to the Plaintiff's interrogatories propounded through the Fürstliche Landgericht are offered as evidence of a material fact and are more probative on the point for which it is offered than any other evidence which Windsor can procure through reasonable efforts. Moreover, the

general purposes of the Federal Rules of Evidence and the interests of justice will be served by the admission of the testimony into evidence. Windsor disputes the Plaintiff's comparison of Kolzoff's testimony to grand jury testimony. Kolzoff's testimony was obtained at the request of the Plaintiff through procedures prescribed by the Federal Rules of Civil Procedure and the Hague Convention. Kolzoff has the right to assert objections allowed under the applicable law.

Windsor further claims that Plaintiff has cited no law which requires that a third party foreign national submit itself to the jurisdiction of the United States court system. Moreover, the Federal Rules of Civil Procedure and the Hague Convention proscribe certain procedures by which the judicial authorities of contracting states may request evidence in another contracting state. See Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 524 (1987). The accession of a country to the Hague Convention does not compel any contracting state to change its evidence-gathering procedures. See id. at 534. Windsor contends that a foreign judicial system, while

different than the American system, "is neither less impartial nor less interested in obtaining accurate testimony from witnesses." See Salim, 855 F.2d at 952.[1]

Windsor claims that Kolzoff's testimony, in direct answer to the questions propounded by the Plaintiff, was made under oath pursuant to Article 31 of the Liechtenstein Code of Civil Procedure with consequences under criminal law for giving false testimony. It further alleges that Kolzoff's testimony will be offered as evidence of these material facts: (1) that TI&M is the sole shareholder of Windsor pursuant to the stock certificate issued February 9, 2002; and (2) that Irving Cohen is not and never has been a director, member, secretary, partner or shareholder of TI&M. Windsor states that Kolzoff testified under oath to these facts in direct response to the questions propounded by the Plaintiff.

Finally, Windsor asserts that, pursuant to Rule 807(b) of the Federal

_____

[1]As previously discussed, there are few, if any, similarities between the deposition in Salim and how Dr. Kolzoff was questioned in this case. Moreover, it is important to note that the citation to Salim is referring to the French judicial system specifically. See Salim, 855 F.2d at 952. It is probably something of a stretch to say that all foreign judicial systems are as impartial or as interested in obtaining accurate testimony as our own.

Rules of Evidence, reasonable notice of the intent to use Kolzoff's statement was provided in advance of trial.

(3)

The residual exception is to be narrowly construed. <u>See</u> <u>Keri</u>, 458 F.3d at 631. The Court concludes that most of the factors weigh in favor of excluding Kolzoff's testimony. The most important consideration listed in Rule 807 is that the statement have "circumstantial guarantees of trustworthiness."

In assessing trustworthiness, the Court examines a number of factors. The Plaintiff states it has no available evidence of Kolzoff's character. Windsor states only that Plaintiff makes no claim that Kolzoff does not possess a character of truthfulness and honesty. Because there does not appear to be any evidence on the issue, therefore, the Court has no knowledge of Kolzoff's character. This factor weighs against admitting the testimony.

The testimony was given under oath, though Kolzoff did not submit to United States' laws which punish perjury. His testimony was subject to

Liechtenstein penalties for giving false testimony. Although Windsor notes that Plaintiff had an opportunity to develop questions propounded to Kolzoff, the witness answered only a fraction of the questions in his statement. Therefore, it cannot be said that Kolzoff was subject to cross-examination. This factor weighs against admitting the testimony of the out-of-court declarant.

As for the witness's relationship with the parties, the Plaintiff states that Kolzoff has no known relationship or vested interest in the United States. The Plaintiff points out that, to the extent that Kolzoff does actually represent TI&M, and if Windsor is a wholly-owned subsidiary of TI&M, Kolzoff would be highly motivated to downplay Cohen's role in Windsor or the Property. TI&M and Windsor could lose millions if the United States were allowed to foreclose upon the Property. The Plaintiff contends there was no motivation for Kolzoff to be forthright in his December 17, 2010 testimony, particularly when he was not subject to cross-examination or concerned with stiff penalties for perjury.

Windsor says nothing directly about Kolzoff's relationship with the

parties, though Kolzoff's testimony alludes to a relationship. It says Kolzoff's testimony will be offered as evidence that TI&M became the sole shareholder of Windsor, though that was well before Kolzoff was affiliated with TI&M. Kolzoff would further testify that Irving Cohen has never been affiliated with TI&M.

Thus, the only evidence offered as to the witness's relationship with the parties and motivation is that Kolzoff has a business relationship with the Defendants and Kolzoff's business could suffer a financial loss if the Plaintiff prevails. This factor weighs against admission of Kolzoff's testimony.

The next factor is the extent to which the witness's testimony reflects personal knowledge. The Plaintiff states that Kolzoff's testimony gives the Court little evidence to assess the source or extent of that knowledge. Kolzoff states that his testimony is of limited value because his membership in TI&M began on April 4, 2008. The Plaintiff states that because Cohen testified that he flew to Liechtenstein in late 2001 or January of 2002 to meet with Kolzoff about the Property, Kolzoff's testimony that he was not

affiliated with TI&M until 2008 raises a number of questions.

Windsor alleges that Kolzoff testifies to matters within his personal knowledge and specifically acknowledges that he is unable to answer many questions from personal experience. Windsor further claims there is corroborating evidence to support his testimony, including a copy of the stock certificate issued in 2002, the declaration of Kolzoff, and Irving Cohen's testimony. Except for noting that Kolzoff could not answer some questions, Windsor does not address the Plaintiff's assertion that Kolzoff's testimony may be inconsistent with Cohen's.

It is difficult to determine the extent to which Kolzoff's testimony reflects his personal knowledge. Even Kolzoff says his testimony is of limited value. Accordingly, the Court concludes this factor weighs against admission of Kolzoff's testimony.

There is no evidence that Kolzoff ever recanted his testimony. This factor weighs slightly in favor of admission of his testimony. It is of limited value because Kolzoff was not subject to cross-examination or follow-up questions.

There does not appear to be much in the form of corroborating evidence. Kolzoff produced no documents in response to eighteen document requests in the Letters of Request. If he had done so, there might be evidence in the record to support or refute Kolzoff's assertions. The Plaintiff notes that minutes of TI&M board meetings might show who managed that entity. Loan documents, wire transfer records, financial statements, and contracts could show the legal and financial relationships among TI&M, Windsor, Kolzoff and Cohen. Windsor does not address these matters. The Court concludes that the fact there is little in the form of corroborating evidence weighs against admission of Kolzoff's testimony pursuant to the residual exception.

Another factor concerns the reasons for the witness's unavailability. The Plaintiff alleges that Kolzoff is unavailable at trial by choice. That decision detracts from the trustworthiness of his testimony because Kolzoff, a lawyer, refused to submit to a jurisdiction in which he would be subjected to cross-examination. Instead, the Plaintiff asserts that Kolzoff insisted on proceeding in Liechtenstein, where he could hide behind European banking-

secrecy laws and refuse to answer questions. Based on the absence of corroboration or cross-examination, the Plaintiff contends that Kolzoff's words are too untrustworthy to be admitted.

Windsor claims that neither party may compel the attendance of a third party national to submit itself to the jurisdiction of the United States. A foreign national has a right not to do so. Windsor asserts that the Hague Convention does not require that Liechtenstein change its own procedures when executing the Letter of Request.

Windsor is correct in asserting that Kolzoff cannot be compelled to participate. Moreover, Liechtenstein cannot be required to change its procedures. However, that does make Kolzoff's testimony any more trustworthy. The fact that the deposition was conducted in accordance with Liechtenstein procedures is not particularly probative of the statement's reliability. In fact, the Plaintiff correctly asserts that Kolzoff's decision detracts from the trustworthiness of his testimony. Accordingly, this factor weighs against admission of Kolzoff's testimony.

Because the residual exception should be narrowly construed and

because most of the applicable factors weigh against admitting the testimony, the Court concludes that Kolzoff's testimony is inadmissible pursuant to Rule 807. The most important factors are Kolzoff's admitted limited amount of knowledge, the limited corroborating evidence, and the fact that Kolzoff was not subject to cross-examination. It is also significant that Kolzoff could lose money if the Plaintiff prevails. The Court concludes that Kolzoff's statement does not have "equivalent circumstantial guarantees of trustworthiness," as other testimony which is admitted pursuant to hearsay exceptions. Accordingly, it would not serve the interests of justice to admit the testimony.

(4)

Accordingly, Kolzoff's testimony is inadmissible under both Rule 804(b) and Rule 807. The Plaintiff's motion in limine will be Allowed.

<u>Ergo</u>, the Plaintiff's Motion in Limine to exclude the expert testimony of Herman Schwartzman [d/e 158] is ALLOWED in part. Mr. Schwartzman's opinions on the following shall be excluded: (1) the validity of the Cohen No. 2 Trusts; (2) the powers and authority granted the

trustees of the Cohen No. 2 Trusts and the Lillian Rosen Trusts; (3) the extent of the economic benefit Irving Cohen received from the Cohen No. 2 Trusts; (4) the legal implications of a 1983 agreement between the Cohen No. 2 Trusts and the Lillian Rosen Trusts; and (5) the powers and duties given to the trustee of the Lillian Rosen Trusts and the propriety of the trustee's actions. The admissibility of any other purported expert testimony from Mr. Schwartman shall be considered at trial.

The Motion in Limine to exclude Markus Kolzoff's testimony [d/e 160] is ALLOWED.

ENTER: January 31, 2012


FOR THE COURT:

s/Richard Mills
United States District Judge